JNO. B. DAVIS v. W. H. AND ANNIE McCARTNEY.

(Case No. 1896.)

1. COMMUNITY PROPERTY — CREDITORS — WIFE — EQUITABLE TITLE. — A husband died, August 16, 1876, leaving community property, including a homestead of the value of $2,500, and community debts amounting to $4,000; the wife married again, and not having qualified as survivor, sold the homestead and used the proceeds in paying the community debts. *Held:*

(1) That the laws in force in 1876 recognized no right in a creditor to subject the homestead of a deceased party to the payment of his debts, if a widow or minor child survived. Constitution and act of August 9, 1876, discussed.

(2) The creditors could fix a charge on the homestead only when the widow
and minor child ceased to use it as such and the right of all the heirs to
have it partitioned among them accrued.

(3) The widow, by the sale, renounced her right of occupancy, and the
heir, being a non-resident minor with no guardian in this state, the property
lost its homestead character.

(4) On the death of the husband, the surviving wife is not personally liable
for the community debts, but the community property is incumbered with
an equitable charge for their payment. This equitable charge becomes a
legal charge if the wife qualifies as survivor or if administration is had upon
the estate.

(5) Without making the equitable charge a legal one, the wife may dis-
charge the equitable incumbrance upon the community estate by the con-
veyance of an equitable title to it. Such an irregular but just disposition
of the property, the proceeds being applied to the payment of community
debts, would convey an equitable title superior to the legal title to the hus-
band's half.

(6) Under the first and succeeding statutes the powers of the wife under
them have been made to cease with her widowhood; but while single, she has
all the rights and powers of a *feme sole*, and can bind herself personally as
well as the estate. On a second marriage she ceases to be a free agent and
is shorn of these rights, and she cannot convey the equitable any more than
she could have conveyed the legal estate. This is the policy of the statutes.

(7) By her second marriage the widow lost all control or right of disposi-
tion, legal or equitable, over the half of the homestead owned by her hus-
band's heir.

2. ACKNOWLEDGMENT — MARRIED WOMAN.— A certificate of the separate ac-
knowledgment of a married woman, which fails to show that it was taken
privily and apart from her husband, and that she declared the instrument
to be her act and deed, and that she had willingly executed it and did not
wish to retract it, is defective.

APPEAL from Bowie. Tried below before the Hon. W. P. McLean.
The opinion states the case.

The third assignment of error was that the court erred in admit-
ting in evidence the deed of W. M. Devere and Sallie M. Devere,
purporting to convey the property in controversy to defendant
Annie McCartney; the certificate of the separate acknowledgment
of the said Sallie M. Devere fails to show that the same was taken
privily and apart from her husband; that she declared said instru-
ment to be her act and deed; that she had willingly executed said
deed, and that she did not wish to retract it.

*J. M. Talbot*, for appellant, on the admission of the deed, cited:
R. S., arts. 559, 4311, 4313; Berry *v.* Donley, 26 Tex., 737; Eck-
hardt *v.* Schlecht, 29 Tex., 129; Fitzgerald *v.* Turner, 43 Tex., 79;
Ruleman *v.* Pritchett, 56 Tex., 482.

On the right of control ceasing on marriage, he cited: Pasch.

Dig., art. 4642; R. S., arts. 1653, 2181, 2182; Probate Law of 1876, sec. 116.

On an absolute fee vesting in the heir, he cited: Probate Law of 1876, sec. 57; Green *v.* Crow, 17 Tex., 180; Trammell *v.* Neal, Tex. Law Journal, vol. 3, No. 21, page 325; Reeves *v.* Petty, 44 Tex., 252; Sossaman *v.* Powell, 21 Tex., 665; Lockhart *v.* White, 18 Tex., 108; Runnels *v.* Runnels, 27 Tex., 515.

*F. M. Henry, Tilson & Henderson* and *Todd & Hudgins,* for appellees, cited: Wright *v.* Doherty, 50 Tex., 34; Shannon *v.* Gray, 59 Tex., 251; Sossaman *v.* Powell, 21 Tex., 664; Clark *v.* Nolan, 38 Tex., 416; Johnson *v.* Taylor, 43 Tex., 121.

ROBERTSON, ASSOCIATE JUSTICE.— There was no conflict in the evidence and no substantial controversy in the court below as to the material facts in this case. The testimony showed that the land in controversy was the community property of Wm. J. and Sallie Davis, and that at the date of the former's death on August 16, 1876, it was used and occupied as a homestead; that the plaintiff at that time was a minor and the only child of Wm. J. Davis by a former marriage; that the community estate, including the homestead, did not exceed in value about the sum of $2,500, whilst the community debts amounted to about $4,000; that the survivor of the community, Sallie Davis, sold all the community property and used the proceeds in the payment of community debts, without filing an inventory and qualifying as survivor under the statute, and that she sold the land in controversy for the laudable purpose already stated after she married a second time. Upon these facts clearly proven, the court below charged the jury that the plaintiff, who sued for his father's community interest in the late homestead, could not recover if the sale was made and the proceeds used to pay debts. In accordance with the facts and this charge, a verdict and judgment were rendered for the defendants, who were the vendees of Mrs. Davis, and the plaintiff appealed. The correctness of this result is challenged by the appellant, mainly, upon two propositions:

First. That Mrs. Davis had no right to dispose of appellant's half interest in the community homestead for the purpose of paying community debts; and

Second. That her power over appellant's half of the community lands ceased with her second marriage.

Neither the constitution of 1876 nor the act of the legislature of August 9 of the same year, which were in force at the date of the

death of William J. Davis, and at the date of the sale by Mrs. Davis of the land in controversy to the appellees, recognize any right in a creditor of a deceased person, if a widow or minor child survives him, to have the homestead of the family subjected to the payment of his debt. The constitution provides that, subject to the right of the widow and minor child or children to occupy and use the homestead as an entirety, it shall descend and vest in the heirs of the decedent as other real property. The legislative act referred to provides that the homestead and other exempt property shall be set aside to the " widow, minor children, and unmarried daughters living with the family, of the deceased;" and if the estate is solvent, the exempt property, except the homestead and allowances in lieu of exemptions, are to be taken into account on final distribution. The section of the constitution already referred to forbade the consideration of the homestead in this account, and neither the constitution nor the legislative act provide any contingency in which the homestead, which has survived to the widow or minor children, shall ever be reached by creditors of the deceased. If, therefore, the creditors of the deceased can ever fix a charge upon such property, it must be when the widow and minor child have ceased to use it as a homestead, and the right of all the heirs to have it partitioned among them has accrued. And at the date of the sale to appellees this right of partition had accrued, because the widow by the sale renounced her right of occupancy, and the plaintiff was a non-resident, and, though a minor, it does not appear that he had a guardian in this state. In this situation the property had lost its homestead character, and whether any right of the creditors would then attach to it, protecting in equity a disposition of it made by the widow for their benefit, will be a question necessarily arising, if Mrs. Davis' right to make such disposition of any community property was not extinguished by her second marriage.

Upon the death of the husband the surviving wife succeeds to no personal liability for the community debts, but her half of the community property, in common with the half the legal title to which has descended to the heirs of her deceased husband, is incumbered with an equitable charge for the payment of community debts. This equitable becomes a legal charge if the wife qualifies as survivor under the statute or if administration is had upon the decedent's estate. But without making the incumbrance of community debts upon community property a legal charge, the surviving wife, acting fairly and freely, may discharge the equitable incumbrance upon the common property by the conveyance of an equitable title

to it. She has no legal right to make such sale, but if she does make it in good faith the holders of the legal title to the husband's half cannot defeat the equities of her vendee. In such case the property has been irregularly, but not improperly, applied to the extinguishment of a claim prior in time and superior in right to the title descended to the heirs of the deceased husband. To enable the survivor at law as well as in equity to use the common property to pay the community debts, the statutes were enacted authorizing the surviving husband or wife, as the case may be, to qualify as such and have thereafter the exclusive management and control of the community property. But in the first and every subsequent enactment of these statutes the powers of the surviving wife under them have been made to cease with her widowhood. Whilst she remains single she has all the rights and powers of a *feme sole*. In the administration of the powers conferred by the statute she exposes to equal risk her own and her deceased husband's half of the community property, and the success of her management is great or small according to her business capacity. She has the power to bind herself personally as well as the estate she controls — to make, execute and enforce contracts, to sell and exchange property, freed from the control of any will but her own. Her judgment has full sway; — what that dictates she can do; what it disapproves she can let alone. But when she marries again, the situation is changed. She is no longer a free agent in the business affairs of life. She can impose upon the wife of her husband the burden of no personal responsibility, nor make any change in the situation of her separate or trust estate without his active concurrence. However worthy and capable, a new influence has entered her mind, and her rights and powers are subjected to new legal restrictions and placed beneath the possibly interested or unfriendly control of the new husband. To prevent such restriction upon the legal administration of the community estate, the surviving wife is shorn of her powers as such upon her second marriage. The equitable administration is not less important to the heirs of the deceased and to the creditors, and requires for its efficiency as great freedom of will and power to contract. If it is impolitic to allow the surviving wife to convey the legal title to community property for the purpose of paying community debts after she has surrendered her faculties to the dominion of a second husband, what distinction exists to make it politic for her, under the same circumstances, to retain the power to convey the equitable estate? But independent of the policy indicated by the statute, a wife is fettered with too many disabilities

successfully to wind up the business of the connubial partnership she has so effectually put behind her. Her legal incapacity is illustrated in this case by the fact that appellees are claiming under a deed, signed by Mrs. Davis, and by her testimony shown to be her voluntary act, which, nevertheless, cannot be properly admitted in evidence because of plain defects in the certificate of her privy examination. The deed was improperly admitted in evidence over appellant's objection. But the judgment of the court below must be reversed, because this deed, if properly authenticated, was made by Mrs. Davis after she had lost by her second marriage all control or right of disposition, legal or equitable, over appellant's half of the lot in controversy.

The appellant has also assigned as error the action of the court below in refusing to quash the deposition of Mrs. Davis on the ground mainly that she did not fully answer the cross-interrogatories. Some of the points made upon the deposition are well taken. In the view of the law disposing of the case taken by the court below the answers were properly regarded as unimportant. If they become material on another trial the deposition should be quashed.

For the error announced, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered October 30, 1885.]