F. AUERBACH ET AL. V. R. K. WYLIE ET AL.

No. 7187.

1. **Recitals in Deeds—Pedigree.**—For the purpose of identification recitals in deeds are admissible as original evidence when including facts of birth, marriage, and death. In this case the recital concerning the land certificate conveyed, that "the said certificate is known to be the headright of August Auerbach, first husband of Louisa Hammer," was competent evidence to prove that the maker of the deed Laura was the widow of Auerbach, and also that Andres Hammer, who joined with her in the deed, was the same person known sometimes as Antone Hammer, and by which name he married said Laura.

2. **Community Property—Widow Loses Control After Second Marriage.**— Davis v. McCartney, 64 Texas, 588, adhered to, that the power of the surviving wife, ceases with her widowhood as well with reference to the equitable as the legal title to the community property. Her deed to community property executed after her marriage only affects her own interest; it is void as to her first husband's heirs.

3. **Hensel v. Kegans**, 79 Texas, 347, adhered to, touching presumption of community debts to sustain a deed by surviving partner from lapse of time, absence of claim, possession, etc.

APPEAL from Runnels. Tried below before Hon. J. W. TIMMINS. No statement is necessary.

*Powell & Smith,* for appellants.—1. The court erred in submitting to the jury, as a question of fact to be found by the jury, whether or not the said Louisa Hammer was the surviving widow of August Auerbach, deceased, in the absence of any testimony to show or establish such fact.

2. If the deed to Zehner was made by the widow of August Auerbach, deceased, the certificate being community property, and having been conveyed after the death of the father of appellants, in the absence of some fact giving their mother the power to convey it, they would be entitled to recover their interest in the land, it being 246⁶⁄₇ acres; and in the absence of evidence as to the existence of such fact, no presumption arises that such fact did exist.

*C. O. Harris* and *C. H. Willingham,* for appellee Wylie.—1. Under the statute of 1848 (under which the sale in controversy was made), the survivor in community, whether husband or wife, had the right, power, and authority to sell the community property of said survivor, and his or her deceased spouse, for the purpose of paying community debts, or to reimburse him or herself for community debts paid out of the separate estate or subsequent earnings of said survivor. Pasch. Dig., art. 4646; Carter and Rust v. Conner, 60 Texas, 52; Sanger Bros. v. Moody, 60 Texas, 96; Walker v. Howard, 34 Texas, 478; Burleson v. Burleson, 28 Texas, 383; Jones v. Jones, 15 Texas, 143.

2.   Where an heir seeks to recover the community interest of a de-ceased parent in property sold by the survivor, after a period of more than forty years after the death of said parent, and thirty-seven years after said sale by the surviving parent, in absence of express proof to the contrary, after the lapse of so great a length of time, the law will presume that the property so sold was sold to pay community debts, and that such facts as would authorize a sale by the survivor existed.   Veramendi v. Hutchins, 48 Texas, 531; Id., 56 Texas, 414; Manchaca v. Field, 62 Texas, 136; Harrison v. McMurray, 71 Texas, 122.

3.   After the lapse of thirty-seven years, it will be presumed, in absence of proof to the contrary, that there were community debts, and that the sale was made to pay same, or to reimburse the survivor for debts paid out of his or her separate estate or subsequent earnings, and that such facts as would authorize such sale existed, and a sale by such survivor would convey the legal title to the property so sold.   If the heirs fail to assert a claim within ten years from the time their right of action accrued, then their claim becomes a stale demand, and is barred by lapse of time.   Parker v. Spencer, 61 Texas, 156; John-son v. Newman, 43 Texas, 628; McMasters v. Mills, 30 Texas, 591; Carlisle v. Hart, 27 Texas, 350; Burleson v. Burleson, 28 Texas, 418.

*T. T. Crosson and J. M. Crosson*, attorneys for appellees, the Thomp-sons, warrantors.—1.   Appellants' first proposition and assignment is substantially this:   The court erred in overruling plaintiffs' exceptions to the deed from A. Hammer and Louisa Hammer to H. Zehner, for that, (1) it does not show upon its face to be a transfer from surviving widow of Auerbach; (2) it does not show to be a transfer from any one authorized to make it; (3) it does not show upon its face to have been sold for the purpose of paying community debts.   We deny, and insist that the court was correct in said ruling.   Hensel v. Kegans, 79 Texas, 347; Russell v. Oliver, 78 Texas, 16; Veramendi v. Hutchins, 48 Texas, 553; Id., 56 Texas, 422; Burleson v. Burleson, 28 Texas, 418; Box v. Word, 65 Texas, 166; Chamblee v. Tarbox, 27 Texas, 144.

2.   Appellants' proposition under third assignment is in substance as follows:   The court erred in submitting to the jury as a question of fact to be found by them, whether or not the said Louisa Hammer was or was not the surviving widow of August Auerbach, deceased, in the absence of any testimony to establish the fact.   This we deny, and sub-mit that the court was correct in said submission.   Russell v. Oliver, 78 Texas, 16; Chamblee v. Tarbox, 27 Texas, 144.

TARLTON, JUDGE, *Section B.*—This is an appeal from a judgment rendered by the District Court of Runnels County, in favor of R. K. Wylie and of R. M. and H. A. Thompson.

The suit, in trespass to try title, was brought May 29, 1889, by F. Auerbach, Constantine Kohlleffel and her husband C. F. Kohlleffel, and Ida Schmidt and her husband F. Schmidt, against R. K. Wylie, to recover an undivided interest of 246⅘ acres in the Auerbach 640 acres survey in Runnels County. The appellees Thompson were made parties defendant as warrantors of the appellee Wylie.

The plaintiffs and appellants claim as children and heirs at law of August Auerbach, deceased. The initial link in the appellees' chain of title is a conveyance of the certificate by virtue of which the survey was located, by Louisa Hammer and A. Hammer, the former alleged to be the surviving wife of August Auerbach. The certificate was the community property of August Auerbach and his wife Louisa. August Auerbach and his wife Louisa immigrated to Texas as German colonists, about the year 1846, by virtue of the colonization contract of Fisher and Miller. August Auerbach became thus entitled as the head of a family to the certificate in question. After his arrival in this country August Auerbach died, in the latter part of 1846 or in the early part of 1847. He left his widow Louisa and five children, three of them the plaintiffs in this suit. In 1848 or 1849 the widow Louisa married a second husband, Antone Hammer.

May 11, 1850, the certificate in question was issued to the "heirs of August Auerbach, deceased." September 13, 1851, this certificate was transferred to Henrich Zehner, by written conveyance of Andres Hammer and Louisa Hammer, the instrument being signed by A. Hammer and Louisa Hammer. It was filed for record in Runnels County, July 3, 1883. July 16, 1874, the certificate was located on the 640 acres tract in question. May 17, 1875, by virtue of the certificate in question, patent issued to the "heirs of August Auerbach, deceased."

Appellees claim under the deed to Henrich Zehner, and contend that it was executed by the surviving wife Louisa Hammer, joined pro forma by her husband A. Hammer, in payment of the community debts of herself and her former husband, August Auerbach. The jury trying the case so found.

Appellants' first assignment of error presents the question of the admissibility in evidence of this deed to Zehner.

The instrument, as already stated, is signed by "A. Hammer" and "Louisa Hammer." On its face it purports to be executed by Andres Hammer and his wife Louisa Hammer. In describing the property sold, it recites, that "the said certificate is known to be the headright of August Auerbach, first husband of Louisa Hammer." The deed recites "a consideration of $100 to us in hand paid," and to it is attached a receipt, dated September 17, 1851, by A. Hammer, for $100, the money referred to in the deed. Objection was urged to the introduction of the deed, on the ground that there was no evidence indicating that the grantor, Louisa Hammer, was the surviving wife of

August Auerbach.  This objection rests upon the fact that Louisa Auerbach had married *Antone* Hammer, and not *Andres* Hammer, the name of the husband stated in the deed.  If there was evidence showing that Andres and Antone Hammer was the same person, there can be no merit in this objection.  This identity, we think, is indicated by the recital in the deed that August Auerbach was the first husband of Louisa Auerbach, the wife, at the date of the instrument, of Andres Hammer.  For the purposes of identification, recitals in deeds are admissible as original evidence, when including facts of birth, marriage, and death.  Chamblee v. Tarbox, 27 Texas, 140; Russell v. Oliver, 78 Texas, 16.

The court properly permitted the jury to determine the question whether the Louisa Hammer who signed the deed as the wife of Andres Hammer was the same person as the Louisa Auerbach who married Antone Hammer after the death of August Auerbach.

A more serious objection to this instrument, however, is suggested in appellant's first assignment of error, and relied on in their brief. Appellees contend that the deed conveyed the title to the entire certificate, including the community interest of August Auerbach, because it was executed by the surviving wife in payment of community debts. Appellant's reply, that after and during her marriage with Hammer, the grantor Louisa was deprived of her powers as the surviving wife of Auerbach, and was incapable of conveying his interest in the community property even in payment of community debts.

Adhering to the opinion of this court in the case of Davis v. McCartney, 64 Texas, 588, we sustain the objection to the deed on the ground last stated as urged by appellants.  In that case, the conclusion is reached that the powers of the surviving wife ceased with her widowhood, as well with reference to the equitable as to the legal title to community property.  Her freedom of agency is, in the eyes of the law, so absorbed in the will of her husband that she is deemed to be incapacitated "to successfully wind up the connubial partnership she has so effectually put behind her."

We concur in the reasoning of the court in the case cited.  In this instance we find a practical illustration of its force.  As shown by the receipt attached to the deed to Zehner, the latter paid the purchase money of the certificate to the husband Hammer.  This fund was thus placed subject to his exclusive control and disposition; though to the extent of the half-interest belonging to the estate of August Auerbach, he was an utter stranger.

It can not be said with entire accuracy that the husband is but a formal party to the deed.  While in one sense this may be true, it is nevertheless also true, that without his co-operation the deed of the wife is a nullity.  His concurrence in the execution of the deed is essential to its validity.  He thus becomes active in the disposition of

property in which he has no interest.    The power exerted by the wife is not and could not be exercised by herself alone, but by her through and under the co-operation of her husband.    The law correctly imputes to the husband such control over the wife, springing from the marital relation, as should deprive her of the power of executing deeds in payment of the debts of a former community.    The case cited arose after the Act of 1876, which provides, that in the event of a second marriage by the wife her power as a survivor should cease.    The case itself, however, involved a transaction not by a surviving wife who had qualified under that statute, but by one who had acted independently; and the reasoning of the court clearly indicates that its opinion was in no way due to the provisions of that statute.

Appellants complain of the following paragraph of the court's charge: "You are instructed, that if you find from the evidence that plaintiffs are the surviving children of August and Louisa Auerbach, then you will find for plaintiffs for the land sued for; unless you find that the deed from Louisa and A. Hammer to Zehner, dated September 13, 1851, conveyed the whole of the land certificate by virtue of which said land was located; and in this connection you are instructed, that if the said Louisa Hammer was the surviving wife of August Auerbach, and she made said sale for the purpose of paying debts of the community estate, or to reimburse her for her separate estate, expended in paying said debts, then the said deed conveyed title to the whole of said certificate, and in that event you will find for the defendants."

The foregoing charge is assailed as involving an assumption by the court that Louisa Hammer was the surviving wife of August Auerbach, and as inferentially instructing the jury that the certificate had been sold by the surviving wife for the purpose of paying debts or of reimbursing her for her separate means expended in paying debts.    The charge does not merit the criticism.    The identity of Louisa Hammer, the existence of community debts and of the remaining conditions referred to, were fairly submitted to the jury for their determination.

Appellants further complain of the following paragraph of the court's charge: "In determining whether there were community debts at the death of August Auerbach, you will take into consideration the great lapse of time since said deed to Zehner was made, and that plaintiffs have made no claim to the land in controversy, and that defendant and his grantors have held possession of said certificate, and after so great lapse of time the jury are at liberty to presume that there were community debts, unless the evidence affirmatively shows that there were no debts."

It is insisted that this charge is on the weight of evidence; that the court assumes as facts the great lapse of time since the execution of the deed to Zehner, the absence of claim by the plaintiffs to the land in

controversy, and the possession by the defendant and his grantors of the certificate.

In the recent case of Hensel v. Kegans, 79 Texas, 347, it appears that a headright certificate issued to a married man, and that in 1855, five years after his wife's death, he transferred it to the plaintiffs, to whom the patent was issued in 1858. The suit was brought in 1887, and it was held by this court, that after so great a lapse of time the presumption of fact might be indulged that the certificate was sold in payment of community debts. This presumption would have to be rebutted by evidence on the part of the defendants.

In the present case, the record presents the fact of great lapse of time as undisputed, and the court was therefore authorized to assume its existence, and to instruct the jury with reference to the presumption flowing therefrom. As the lapse of time alone was sufficient to justify the instruction, reference to the remaining facts, the absence of claim by the plaintiffs, and the possession of the certificate by the defendant, was superfluous, and, if erroneous, harmless.

As, however, the deed to Zehner was erroneously admitted, these instructions are without support.

The judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted May 17, 1892.

FISHER, JUDGE, *Section B*, DISSENTING.—I do not concur in the majority opinion of the court. My dissent relates solely to the point decided, that the surviving wife of the community lost her power to sell the effects of the community for the purpose of paying community debts after her second marriage. In other respects, I concur in the disposition made of the other questions discussed in the opinion.

The relationship of the husband and wife as to their rights in the community property is in the nature of a connubial partnership, of which the right of disposition and control is lodged in the husband during a continuance of the marital relationship. Upon his death these rights and powers, for the purpose of satisfying the liabilities created by the partnership, are vested in the surviving wife, and as the survivor of such partnership she can dispose of the partnership assets for the purpose of paying the community debts. The question is one of power. It is granted her upon the idea that she, being the survivor, has the right to wind up the affairs of the partnership to the extent of paying the common liabilities by the firm assets. It seems to me that the right is based upon this idea solely, and that the wife does not lose this power upon her second marriage. If it was the case that the power of the wife was lost or regulated by subsequent marriages, the power would revive when the second husband died and would be lost when the third husband took his place, and so on ad infinitum as often as she

may enter into subsequent marriages. In other words, the power and right would fluctuate according to the subsequent marriages and release therefrom by divorce or death. I do not believe that the law rests the power upon such uncertain contingencies.

In these sales by the survivor for the purpose of paying the common debts of the spouses the law does not require that the purchaser shall see to the proper application of the purchase money. But it assumes that: the sale being for such purpose, it will be applied by the survivor to the payment of such debts; and the law can not assume that the second husband will undertake to defeat this purpose. The second husband, as said in the opinion of the court, has no interest in the property that is sold or the property arising therefrom except that given by law in the management of the wife's separate property. If this separate property of the wife is derived from her interest in the community estate of the former marriage, it is subject to the payment of. the debts of such former community. So is also the interest of the heirs of her deceased husband·in the community property subject to such debts. As to the interest of such heirs, the husband has no power over it whatever, either to receive, control, or dispose of. If such property is in the hands of the wife, the second husband does not control it, and does not acquire any sort of interest in it. There is nothing in the law that prohibits the wife from having possession of such property of the heirs that they received from the community estate of a former marriage.

Suppose that the wife prior to the second marriage had sold all the community property of the former marriage for the purpose of paying community debts, and before paying such debts she entered into the second marriage and had the funds, the proceeds of such sale, on hand at that time, and after such second marriage applied the money to the payment of the community debts of the former marriage. Could the heirs have recovered their interest in the funds so paid out, on the ground that the wife had no power to pay because she had contracted a second marriage? I think not. If this be answered by saying, that the money being actually applied to the discharge of debts the fund sought to be recovered was originally liable for, and for such reason the heirs would be precluded from recovery, the same reason can be given why the heirs should not recover in this case. It is true, that here there is no proof that the proceeds of the sale of the certificate was actually applied to the payment of community debts of the former marriage; but there is the presumption of law that such debts were paid, and in legal effect it is the same as if proof of payment was made, the case as it then stands being in effect an application by the surviving wife of the certificate to the satisfaction and discharge of debts that it was subject to.

If the rule announced in the opinion of the court is correct, the power to make such payment by the wife after the second marriage would not exist in any case, and the heirs would be permitted to recover, notwithstanding the money was applied to the payment of legal debts for which the fund was liable. Because the reason in the opinion given why the surviving wife is deprived of such power is based upon the idea that by the second marriage she loses for all purposes her entity as a free agent, and as at common law is submissive to the dominion of her husband, she being covert and he baron. The property rights of the spouses under our system is opposed to this idea.

In my opinion the case should be affirmed.